THE STATE OF OHIO, APPELLEE, *v.* MCDANIEL, APPELLANT.

[Cite as State *v.* McDaniel (1986), 23 Ohio St. 3d 35.]

(No. 85-1292—Decided March 26, 1986.)

*Anthony J. Celebrezze, Jr.,* attorney general, and *Edward J. Lynch,* for appellee.

*Lappen, Lilley, Kernen & Co., L.P.A.,* and *Will Kernen,* for appellant.

HOLMES, J. The issue presented on appeal is whether the restrictions contained in Ohio Adm. Code 1501:31-15-11(H) and (I) are in conflict with the mandates of R.C. 1533.11. For the reasons set forth below, we hold that the regulation directly conflicts with the statute.

It is apparent that the General Assembly intended both owners and tenants of land to have equal treatment, and to hunt free of licenses or special permits on the land which they own or occupy. R.C. 1533.10 states, in pertinent part:

"* * * [N]o person shall hunt * * * without a hunting license. * * * [T]he owner and the children of the owner of lands * * * may hunt thereon without a hunting license. The *tenant* or manager and children of the tenant or manager, residing on such lands, may hunt thereon without a hunting license." (Emphasis added.)

With respect to the hunting of deer, R.C. 1533.11 provides, in pertinent part:

"* * * [N]o person shall hunt deer on lands of another without first obtaining an annual special deer permit. * * *

"The owner and the children of such owner of lands in this state, may hunt deer * * * thereon without a special deer * * * permit. The *tenant* or manager and children of the tenant or manager, may hunt deer * * * on lands where they reside, without a special deer * * * permit." (Emphasis added.)

On the other hand, Ohio Adm. Code 1501:31-15-11 stated:

"(H) It shall be unlawful for any person to hunt, take, or possess an antlerless deer, * * * without applying for and receiving a free antlerless permit from the division of wildlife. * * *

"(I) Any person who owns ten or more acres in a contiguous block prior to hunting antlerless deer shall submit one application to obtain a family antlerless permit that will permit the landowner, or his spouse, or his child, either to take one antlerless deer on lands which he owns in deer zones one, two, and three, except in deer zone four upon receiving separate antlerless permits, the landowner may take one antlerless deer and his spouse and children may take one antlerless deer between them. Only one family permit will be issued regardless of the number of owners or number of properties owned. It shall be unlawful for any person to take more than one deer under the authority of the family antlerless permit, except in deer zone four the landowner may take one antlerless deer and his spouse and children may take one antlerless deer between them. It shall be unlawful for a landowner who owns less than ten acres, or members of a landowner's family, *or any person not owning land* to apply for or receive such a family antlerless deer permit. Successful hunters must surrender their antlerless permits at an official checking station at the time their deer is checked in." (Emphasis added.)

The Chief of Wildlife is vested with broad discretion to regulate the hunting of deer in Ohio. This authority includes power to limit or forbid the taking of antlerless deer. He may require additional permits for such hunting as a means of controlling the size of Ohio's deer herd. It is within his discretion to determine an appropriate basis, including per parcel of land, for issuance of additional permits. Only where the tenant is treated dissimilarly from the landowner does the statute circumscribe the Chief of Wildlife's regulatory authority. As Judge Grey stated in his dissent below:

"* * * The legislature has determined in R.C. 1533.10 and .11 that landowners and tenants shall be treated the same. This is a reasonable policy. A balance between man and wildlife living on the same lands has to be maintained, but the relationship of any individual to any piece of land is a question of real property law. Whether a person resides on a piece of land in fee or by lease, is really irrelevant to the effect his occupancy has on the surrounding wildlife. The legislature recognizing this principle mandated that owners and tenants be treated equally."

In the instant case, the tenant had made particular efforts to comply with the requirement of an antlerless deer permit, and had such in his possession while hunting on his land. The sole basis of the criminal complaint sought to be enforced is that appellant was a mere tenant and did not own the land on which he hunted. We find such a distinction unwarranted in light of the statutory requirement that tenants and landowners receive similar treatment.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

LOCHER, C. BROWN and DOUGLAS, JJ., concur.

CELEBREZZE, C.J., SWEENEY and WRIGHT, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. I fully agree with the analysis and result reached by the majority in this case. I write separately to clarify why, in my view, the regulations at issue do not comport with the grant of discretion in R.C. 1531.08 to the Chief of Wildlife.

By virtue of R.C. 1531.08, "the chief of the division of wildlife has authority and control in all matters pertaining to the protection, preservation, propagation, possession, and management * * *" of wild animals, and specifically, may establish orders, or regulations, which "may regulate: (A) Taking and possessing wild animals, at any time and place or in any number, quantity, or length, and in any manner, and with such devices as he proscribes; * * *." Despite that broad grant of discretion, however, the legislature in R.C. 1533.11 has provided more specific guidance as to its intentions regarding deer hunting permits.

Indeed, had the legislature never enacted legislation regarding deer hunting permits, the broad grant of authority within R.C. 1531.08 would no doubt have implied the authority to require a scheme of permits in furtherance of the goals therein prescribed. However, we cannot logically allow the Chief of Wildlife to adopt a scheme of special deer permits pursuant to R.C. 1531.08 when that scheme flies in the face of the legislature's clear intent as provided in R.C. 1533.11. Rather, we must presume that the two statutes are to be read *in pari materia,* so as to give full force and effect to manifest legislative intent. See *Myers* v. *State* (1935), 130 Ohio St. 62.

Thus, given the specific language of R.C. 1533.11, I question whether the state can adopt by regulation a system of "special" deer permits applicable to owners and resident tenants for hunting deer on lands they own or lease, respectively. In my view, although under R.C. 1531.08 the Chief of Wildlife can regulate many matters relating to wildlife, including the taking of and times for taking deer, the legislature by R.C. 1533.11 has mandated the scope of required deer permits, and has specifically exempted landowners and resident tenants from permit requirements as related to deer hunting on such persons' own property.

Given that clear expression of legislative intent, I conclude that the regulations at issue in this case conflict with the clear language of R.C. 1533.11, and must fail. Accordingly, I concur.